## Albert B. Vancil, Appellee, v. Fred Schuette, Appellant.

1. CONTEMPT—*when provision erroneously included in a decree.* Where an accounting is ordered between two parties interested in the same business, there being no fraud in the case, it is error to provide in the decree that unless defendant pay the amount ordered within thirty days, he shall be considered and adjudged in contempt of court.

2. EQUITY—*when bill for accounting is improperly allowed.* Where complainant, an employe in a certain company, entered into an agreement with defendant, principal owner of the capital stock to buy a one-fourth interest, continue his work in the stores of the company at a certain salary and to pay for the stock with his share of the profits, his bill asking for an accounting should be dismissed for want of equity where his only complaint is that defendant was overbearing and discourteous in his treatment and had charged his salary for the second year at $165 a month instead of $80, as was done the first year.

Appeal from the Circuit Court of Jackson county; the Hon. WILLIAM N. BUTLER, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded with directions. Opinion filed March 10, 1913.

SCHWARTZ & HAYS and HOSEA V. FERRELL, for appellant.

JAMES H. MARTIN and ANDREW S. CALDWELL, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On June 18, 1903, appellant Fred Schuette, entered into a contract with appellee Albert B. Vancil, reciting that Schuette was the principal owner of the capital stock of the Leader Mercantile Company of Carbondale, Illinois, and Vancil was a clerk in the employ of said company; that Vancil desired to purchase an interest in the business of the company and Schuette, by the contract, agreed to sell him a one-fourth interest

in said business and to assign and transfer to him a number of shares of the capital stock of the company, equal in value to one-fourth of the value of the entire capital stock, for the sum of $3,600; that Vancil should continue his work in the store or stores of the company as before, devoting his time thereto and should receive pay for his services at the rate of $55 per month in cash and in addition thereto, should be entitled to one-fourth of the net earnings of the business, dating from the first day of February, 1903; that on the first day of February of each year thereafter, an account should be taken by the parties of the business of the company for the preceding year and that Vancil's share of the profits, that is one-fourth thereof, should be paid to Schuette to be applied on said sum of $3,600, the purchase price to be paid by Vancil, until the whole of said sum, together with interest thereon at the rate of six per cent. per annum, from the date of said agreement, should be fully paid; that when said purchase price and interest should be fully paid, said Schuette should assign and transfer to Vancil a number of shares of the capital stock of said company, equal to one-fourth of the entire capital stock thereof; that all legitimate expenses of conducting the business should be deducted from the gross earnings, when the annual accounting was had and Vancil should be entitled only to one-fourth of the net profits. Differences subsequently arose between the parties to the contract and on March 28, 1905, appellee commenced this suit against appellant, by filing a bill in chancery.

The amended bill upon which the case was tried, in addition to setting up the contract above referred to, charged that the capital stock of said Leader Mercantile Company, was $5,000; that Schuette was the owner of 48 or 50 shares of said stock and had absolute management and control of the business; that after entering into the contract, appellee proceeded to discharge his duties under the same; that on February 1, 1904, appellant cast up the accounts and informed

appellee his share of the net profits was $1,108.65 for the year then closed, and thereupon made an indorsement upon the written agreement above set forth of that amount; that during said year, appellant treated appellee courteously and kindly but did not permit him to have access to all the books and papers of the concern, nor make a full and explicit showing of the entire business of the year so that appellee could ascertain the proper amount he should be credited with; that during the first year appellant drew each month the sum of $80, but at the beginning of the second year, he arbitrarily and over the objection of appellee, announced that from that date he would draw each month the sum of $165; that during the second year appellant's conduct towards appellee changed and he became disagreeable, overbearing and inconsiderate of appellee's rights and thereupon made appellee's position unpleasant and embarrassing; that at the end of the second year appellee demanded an inspection of the books, bills and documents in order that he might make an accurate estimate of the business for the year then closing, but that appellant refused to permit the same and announced to appellee that he intended to charge as part of the expenses, the sum of $1,980 for his salary for the year, which was at the rate of $165 a month; that on or about the first day of February, 1905, appellee notified appellant of his dissatisfaction of the management of the business by appellant and requested him to account to and settle with appellee for his interest in said business, but that appellant then and at other times since, when requested, refused so to do and now pretends that appellee is not entitled to any interest in the business or share in the net profits of the business for the second year which ought to be at least $500.

The prayer of the bill was that an account be taken of said business dealings and transactions, from February 1, 1903, to February 1, 1905, and that appellant Schuette be decreed to pay appellee what, if anything,

should appear to be due him; and that appellee might have such other and further relief as equity should require.

A demurrer to the amended bill was overruled and an answer filed by appellant, admitting the contract and the amount of the net profits as credited for the first year and denying any mistreatment of appellee after the first year as alleged. It further stated that at the beginning of the second year, appellant told appellee he intended to charge $165 a month for the second year and that appellee did not object to the same; that said amount was intended to cover not only his own services but also those of his wife who was at the head of the millinery department; that at the end of the second year, appellee objected to his deducting $165 a month and thereupon, without other notice or warning, told appellant he was going to quit and a few days later left the service and refused to return; that when appellant learned that appellee was objecting to his receiving $165 a month, he told appellee he would in such case only deduct $80 per month for his services, but that appellee still refused to continue his employment; that said agreement to transfer said shares of stock was conditional upon the faithful performance by appellee of the conditions and stipulations mentioned; that appellee had not made out such a case as entitled him to relief and appellant therefore prayed the same relief and benefit as though he had demurred to said bill.

The cause was referred to the master, who in his report found the issues for the appellee, that the material allegations of the bill had been proven and that there was due appellee from appellant the sum of $1,527.55. This amount was arrived at as follows: Appellant was first charged with $1,108.65, credited on the contract at the end of the first year. To the amount of $1,253.54, which was reported by appellant to appellee as the net profits of the business for the sec-

ond year, there was added the sum of $1,020 which was the difference between appellant's salary at $80 a month and $165 a month, making a total of $2,273.54, one-fourth of which, or $568.38, was treated as appellee's share of the profits for the second year. From this last amount there was deducted the sum of $149.48, the interest at six per cent. on the balance due on the contract price of $3,600 for the second year, after deducting the first year's payment. This made the amount of appellee's credit for the second year, $418.90, which added to its credit for the first year of $1,108.65, made the amount of $1,527.55.

Exceptions to the master's report were overruled by the court and a decree entered, approving and confirming that report and in accordance with its findings. It was also ordered that appellant pay to appellee the sum of $1,527.55, with legal interest from the date of the decree within thirty days and that in default thereof he should be considered and adjudged in contempt of court.

There was no question of fraud raised in the case and the court below erred in providing in the decree that appellant should be held to be in contempt of court for failure to pay the amount found due within the time named. Waiving that question however, there are other reasons why this decree cannot be permitted to stand. It is doubtful if the bill itself stated a good cause for the intervention of a court of chancery. But if the bill could be held to be good the facts developed do not show that appellee was entitled to the relief asked for and given him. There was no attempt by appellee, upon the trial, to show that the profits of the business were different from those stated by appellant. In fact the only evidence produced by appellee as to the amount due him, was his own testimony stating what appellant had told him upon that subject, and his only complaints of appellant were that the latter had been overbearing and discourteous in his treatment

and had charged his salary for the second year at $165 a month instead of $80 as was done in the first year.

Appellant testified that two days after the end of the second year when trouble arose between them, he told appellee he would settle at $80 per month instead of $165, but that appellee refused to talk to him about it and walked away; that every time he tried to talk to appellee about the settlement, the latter would refuse to talk to him; that the only reason appellee assigned for so doing was that he wanted to quit, that he did not want to stay any longer; that when appellee quit he went right to work with a rival company in the same city.

Appellee, when asked on the trial if appellant did not offer to settle with him at the old rate for his salary, said that he had not; that appellant had tried to talk to him but that appellee would not talk and referred appellant to his lawyer. There does not therefore appear to have been any controversy between the parties which made an accounting of their affairs necessary. The amount of the receipts and disbursements were all known and the only real question was whether appellant was entitled to receive $165 a month instead of $80 a month during the second year. It does not even appear that there was a real controversy about this question as appellant seems to have been ready and willing to waive his claim for additional salary. The suit is based on the contract between the two parties above referred to, which appellee did not ask to have set aside. Under the proofs it appears that all that was necessary to be done to settle the account between the parties was to indorse the amount due appellee upon the contract. Appellee failed to make out a case entitling him to the relief sought and the decree of the court below will therefore be reversed and the cause remanded with instructions to the court below to dismiss the bill for want of equity.

*Reversed and remanded with directions.*